THE NATIONAL COMMERCIAL TITLE AND MORTGAGE GUARANTY COMPANY, PROSECUTOR, v. THE STATE BOARD OF TAX APPEALS AND THE CITY OF NEWARK, DEFENDANTS.

Argued October 1, 1940—Decided December 7, 1940.

Before Justices CASE, DONGES and HEHER.

For the prosecutor, *Lindabury, Steelman, Zink & Lafferty* (*James L. R. Lafferty*).

For the defendants, *Vincent J. Casale* and *James F. X. O'Brien*.

The opinion of the court was delivered by

CASE, J. The taxing district of the city of Newark levied an assessment in the amount of $200,000 for the year 1937 upon the capital stock paid in and accumulated surplus of the prosecutor under the provisions of *Pamph. L.* 1918, *ch.* 236, § 307; *R. S.* 54:4-22. The prosecutor appealed the assessment to the Essex County Board of Taxation, which affirmed; then to the State Board of Tax Appeals, which also affirmed. The writ of *certiorari* brings up the assessment and the proceedings thereon.

The statute provides that "every * * * stock insurance company other than life insurance shall be assessed * * * upon the full amount of its capital stock paid in and accumulated surplus. The real estate belonging to every such corpo-

ration shall be taxed in the taxing district where situated, and the amount of assessment upon the real estate shall be deducted from the amount of any assessment made upon the capital stock and accumulated surplus * * *."

Prosecutor is a stock insurance company within the statutory designation. It was, therefore, subject to the tax. The controversy turns upon whether or not the State Board of Tax Appeals erred in denying to the prosecutor a deduction of the assessments upon certain parcels of real estate, which the prosecutor asserts belong to it, in the amount of $4,640,510; for if the prosecutor was entitled to that deduction there would be no values upon which to rest the assessment of $200,000. There appears to be no doubt that there was real estate of record in the name of the prosecutor in the amount named or in some other amount sufficient, if competent for that purpose, to wipe out the disputed assessment. The finding of the State Tax Board was that the figure of $4,640,510 included all of the realty assessed in the name of the company, whether owned by, or belonging to, the company or not and that included in that item was realty to the value of millions of dollars assessed in its name and of record in its name but actually held by it in trust on behalf of guaranteed mortgages of certificate holders and that real estate thus held by the prosecutor did not "belong" to it within the meaning of the statute. The board further found that there was no evidence before it to indicate the assessed value of the real estate truly owned by the prosecutor and that, so far as it could estimate values upon the proofs, a yet higher assessment might properly have been laid upon the company than that which was under appeal.

To understand the significance of the controversy it is necessary to know the character of business which prosecutor had conducted. This business, so far as concerns us, consisted of investing in real estate bonds and mortgages some of which it sold to private investors with accompanying guarantees. Prosecutor sold three types of investment: whole mortgages, guaranteed as to payment of principal and interest; certificates of participating interests in single mortgages, guaranteed as to payment of principal and interest; and certificates

of interest in groups of mortgages guaranteed as to payment of principal and interest. Prosecutor made its profit by retaining a fractional amount of the interest payments; and it had the right, in the event of default, to take possession under or to foreclose the mortgage. Defaults occurred on the part of a number of the mortgagors, and prosecutor, exercising its privilege reserved in the contracts of insurance, proceeded to foreclose the involved mortgages and to buy in many of the properties which had stood as security for the loans. It was the view of the tax board that pending the termination of the contractual relationship between the company and the investor the company was merely trustee of the property whether that property was in the form of a mortgage or of the real estate itself and whether the mortgage was a "guaranteed mortgage," that is, sold outright with accompanying guaranty, or was subdivided in participation certificates among several investors. The trust aspect of the holding is supported by the Chancery decision in *Kelly* v. *Middlesex, &c., Trust Co.,* 116 *N. J. Eq.* 228: "In case the mortgaged premises be taken over by the commissioner (the Commissioner of Banking and Insurance having taken over the insolvent Middlesex Title Guarantee and Trust Company for liquidation) they will be held by him in place of the mortgage, in trust for the equitable holders of the bond and mortgage. Such holders have a preferential right in the bond and mortgage and in anything substituted for or representing that bond and mortgage * * *." That direction seems to us to be sound. Whether the operation is by the company or by the liquidator of that company appears to us to make no difference in that status of the real estate. It may be observed, although the fact is not dispositive of the issue, that the value of real estate while so held in trust is not a part of the prosecutor's paid in capital and surplus and that the debt with which it is affiliated is deducted from gross assets in calculating the net for paid in capital and surplus. It seems clear that if the assignee of the mortgage or the purchaser of participation certificates had occasion, upon insolvency of the company or otherwise, to enforce the trust, the amount paid by the company for taxes would be deductible items on

the accounting to the *cestui*. It follows that a disbursement for taxes on property so acquired and held is a part of the trust transaction and is to be reckoned along with other debts and credits of the trust company until the trust is closed. The statutory provision has remained unchanged since the passage of the 1918 Tax act. *Pamph. L.* 1918, *ch.* 236, § 307. We are of the opinion that property thus encompassed as to title did not, to the extent of the outstanding trust, belong to the company within the meaning of the statute.

The proofs do not show what, if any, portion of the item of $4,640,510 represented assessments on real estate belonging to the company free of trust. The burden was upon the company to prove the facts necessary to the allowance of a deduction.

The single question presented on prosecutor's brief is that the State Board of Tax Appeals erred in denying the deduction of the item of $4,640,510 and in affirming the assessment of $200,000. Affirmance follows as of course if the claimed deduction was properly disallowed; and for the reasons stated we think that there was no error in the disallowance.

The judgment will be affirmed, with costs against the prosecutor.